[S.F. No. 23007. In Bank. Apr. 17, 1974.]

In re WILLIAM F., a Person Coming Under the Juvenile Court Law.
JAMES D. CALLAHAN, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
WILLIAM F., Defendant and Appellant.

250

## COUNSEL

William M. Samsel, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Gloria F. DeHart Alvin J. Knudson and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—William F., a minor, appeals from a judgment (order) finding him to have obstructed peace officers in the discharge of their duties (Pen. Code, § 148) and declaring him to be a person described by Welfare and Institutions Code section 602.[1] He was not made a ward of the court but was placed on six months' probation. The principal issue on appeal is whether counsel who represents a minor in a juvenile court proceeding is entitled as a matter of right to present argument in behalf of the minor at the conclusion of the jurisdictional hearing and before the court announces its findings and order. We conclude that there is such a right, and that its denial in the instant case requires a reversal of the judgment.

Two uniformed deputy sheriffs stopped their patrol car about 9 p.m. to investigate what had been reported to them as an abandoned vehicle

---

[1]Penal Code section 148 designates as a misdemeanant every person "who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office."

Welfare and Institutions Code section 602, at all pertinent times, provided in part: "Any person under the age of 21 years who violates any law of this state . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

parked on a street in a residential area. The vehicle, an old ambulance, lacked license plates. While the officers were engaged in their investigation and were completing a report form, William and several other juveniles approached. According to the testimony of the officers some members of the group were boisterous and profane. Inquiries concerning the vehicle were answered in a frivolous manner. William stated to the officers that they had no right to check the car, and when an officer advised the boys that they should leave William responded that the street belonged to them and that they did not have to leave.

One of the officers asked for and obtained the identification of a boy other than William. While that officer was engaged in a routine warrant check by radio, William and other boys challenged the second officer concerning the deputies' presence in the neighborhood. William's younger brother was observed meddling with a light fixture on the patrol car. When the officer asked the boy to stand away from the car, William argued the point on the ground that the vehicle was county property and for that reason the boys had a right to examine it. The officer asked for and obtained identification from William and advised him that he was under arrest for obstructing police officers in the performance of their duties. William refused an order to seat himself in the rear compartment of the patrol car and thereafter attempted to flee. One officer pursued and apprehended William who resisted, struck the officer and broke free. The officer again chased William and overtook him in a carport. William was hancuffed and returned to the patrol car where he was placed in the rear seat section.

William and witnesses appearing in his behalf at the jurisdictional hearing gave a substantially different account of the events leading to William's apprehension.[2]

William contends that the evidence is insufficient to support the finding of a violation of Penal Code section 148. We are required, of course, to view the evidence in the light most favorable to the lower court's findings (*In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500

---

[2] In their account the boys did not cooperate with the officers but were not boisterous or profane. When an officer told William's brother to keep his hands off the patrol car William asked, "Why?" William also questioned the officers' right to be inside the ambulance. When the officer told William to get into the patrol car, William said he was on his way home and walked away, whereupon the officer struck William on the head with a flashlight. William stated that he did not realize that he had been placed under arrest and did not fight back. He stated that he did not know how he arrived at the carport, having been struck on the head several times. The officer acknowledged that he once struck William with a flashlight. William was then 17 years of age.

P.2d 1]) and in doing so it is manifest that despite claimed inconsistencies in the testimony of the officers and conflicts with the testimony of defense witnesses (see *People* v. *Bassett* (1968) 69 Cal.2d 122, 137-138 [70 Cal. Rptr. 193, 443 P.2d 777]), there is substantial evidence in support of the finding that William obstructed the officers in the discharge of a duty of their office. (Cf. *In re Joe R.* (1970) 12 Cal.App.3d 80, 86 [90 Cal.Rptr. 530].) The contention that the evidence is insufficient is thus without merit.

At the conclusion of testimony at the jurisdictional hearing the court launched upon an analysis of the evidence without asking counsel if they were ready to submit. After a detailed exposition which clearly indicated the court's intentions but before a final conclusion was stated, counsel for William interrupted to request an opportunity to present an argument in behalf of his client. The court denied the request and thereupon concluded that William was within the jurisdiction of the juvenile court.[3]

Welfare and Institutions Code section 680 provides that "The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts . . . ." The right to present argument going to the question of jurisdictional facts would thus appear to lie within the sound discretion of the juvenile court judge, unless that right is afforded as a matter of constitutional compulsion.[4] William contends that his constitutional right to be

---

[3]The pertinent portion of the transcript discloses the following: "[MINOR'S COUNSEL]: Your Honor, I would like to make for the record my comments as to the evidence so that at least we can have something in the record aside from your findings of fact and conclusions of law. THE COURT: No, there is no purpose in that. [MINOR'S COUNSEL]: I think I have a right to present arguments before the case is submitted to you for decision and without that I think all that the record would indicate would be your conclusions. THE COURT: My conclusions are the only ones that are relevant for the record, counsel. Your conclusions, your opinions you have to express on the evidence could in no way support a decision one way or the other any more than my observations do. Either they are supported by the evidence or they aren't supported by it. This has been a relatively short case, not as short as it might have been but it has had very limited issues of fact and I don't believe it would be of benefit to me to have your argument. I think you presented your case very thoroughly and very well and I think the crux of your defense has been quite apparent so I don't think I would be benefited by any arguments in the case. You have your record, and as I say, nothing that you might say is essential to or even will benefit the record if you choose to carry it further. So I will find the allegations of the petition to be true."

[4]The law is more specific in the case of criminal proceedings. Penal Code section 1093, subdivision 5, provides in pertinent part: "When the evidence is concluded, unless the case is submitted on either side, or on both sides, without argument, the district attorney, or other counsel for the People, and counsel for the defendant, may argue the case to the court and jury . . . ."

represented by an attorney as developed in the cases of *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], secures to him the right of a closing argument by his counsel.

■ The right of counsel in juvenile proceedings is predicated on due process concepts of fairness and is not necessarily as broad as the right to counsel in criminal proceedings. The United States Supreme Court "has refrained, in the cases heretofore decided, from taking the easy way with a flat holding that all rights constitutionally assured for the adult accused are to be imposed upon the state juvenile proceedings." (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 545 [29 L.Ed.2d 647, 661, 91 S.Ct. 1976] (plurality opinion).) ■ Rather "the applicable due process standard in juvenile proceedings, as developed by *Gault* and *Winship,* is fundamental fairness. As that standard was applied in those two cases, we have an emphasis on factfinding procedures." (*Id.* at p. 543 [29 L.Ed.2d at p. 659].)

The factfinding procedure is, of course, broader than the mere examination and cross-examination of witnesses. The high court stated in *McKeiver* that it included "notice, counsel, confrontation, cross-examination, and standard of proof." (*Id.* at p. 543.) The immediate issue in the instant case is the extent to which counsel must be permitted to participate to insure fairness in the factfinding procedure in juvenile proceedings, as mandated by the controlling decisions. In *Gault* the court stated: "The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step of the proceedings against him.'" (*In re Gault, supra,* 387 U.S. 1, 36 [18 L.Ed.2d 527, 551], quoting from *Powell* v. *Alabama* (1932) 287 U.S. 45, 61 [77 L.Ed. 158, 166, 53 S.Ct. 55, 84 A.L.R. 527].)

The foregoing statement from *Gault* is determinative of the issue in the present case. As there is a constitutional right to the assistance of counsel to ascertain whether a juvenile has a defense to a jurisdictional charge and to "prepare and submit" a defense, it surely follows that counsel would be precluded from discharging his duties if, after all the testimony had been received, a presentation of the defense was limited by the denial of an opportunity, through argument, to reconcile the testimony with the juvenile's innocence of the charges and attempt to persuade the court to that view. The "guiding hand of counsel" would thus be withdrawn at an important "step of the proceedings against" the juvenile. ■ We conclude,

accordingly, that the presentation of an argument by counsel based upon the evidence introduced at the hearing is an integral part of the right of a juvenile to be represented by counsel at a jurisdictional hearing, and that the denial of that right unless waived is a denial of due process of law.

■■ Having concluded that the assertion of the right of closing argument by counsel at a jurisdictional hearing must be honored if fundamental fairness in the factfinding process is to be accorded to a juvenile, we deem it unnecessary to decide whether that same result can be achieved by first determining that a similar right is constitutionally compelled in adult criminal proceedings and, by an incorporating process (see *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528, 543, 548 [29 L.Ed.2d 647, 659-660, 662]), resolve that such right must also be extended to juvenile proceedings. We note, nevertheless, that for reasons set forth in the margin such a similar right is compelled in criminal proceedings.[5]

It is evident that in the instant case William was denied in part his right to assistance of counsel. We now address ourselves to the question whether such denial requires a reversal of the jurisdictional order. A general denial of counsel has been deemed to require that an adverse order or judgment arising out of the proceedings be set aside or reversed without inquiry into

---

[5]In *People* v. *Green* (1893) 99 Cal. 564 [34 P. 231] this court recognized a constitutional right of closing argument in a jury trial. Although the right was acknowledged to be of constitutional origin, it was held that the trial court could nevertheless terminate an abusive exercise thereof. A one-hour limitation on the right of argument was held to be error in the circumstances of that case. (*Id.* at p. 569.) In *People* v. *Mendosa* (1918) 178 Cal. 509 [173 P. 998], however, we held there was no abuse of discretion in limiting argument to 15 minutes in the circumstances of that case.

The right has also been recognized in nonjury cases. In *People* v. *Don Carlos* (1941) 47 Cal.App.2d Supp. 863 [117 P.2d 748] the court first held that statements by the trial judge dissuaded rather than prevented full argument by defense counsel, and then by dicta dealt with the issue as if counsel had been precluded from making further argument. The court reasoned that the constitutional right "to appear and defend, in person and with counsel" (Const., art. I, § 13) "undoubtedly confers a right to have the benefit of appropriate argument by counsel." (*Id.* at p. 866.) As in *Green* the right was recognized to be limited when the court had been fully advised and required no further enlightenment from counsel. (*Id.* at p. 867.)

We distill from the foregoing line of cases the recognition of a constitutional right of an accused to present a closing argument in criminal proceedings. It is within a trial court's discretion, however, to determine when such right has been fully asserted in consideration of the nature of the case, the quantity of evidence received, the conflicts in the evidence, if any, the nature and complexity of the legal issues, whether the trial is to a jury or the court, and all other relevant circumstances bearing on the factfinding process. At such time as the right has been fully and fairly asserted the trial court may, in the exercise of its sound discretion, terminate argument without infringing the constitutional right. This appears to be in accord with the weight of authority in other jurisdictions. (See Annot. 6 A.L.R.3d 611, fn. 19; Annot. 38 A.L.R.2d 1396.)

the question of prejudice. The compelling reason for the rule of prejudice per se is that no realistic measure of prejudice resulting from counsel's nonparticipation can be made when, because of the very absence thereof, the record fails to reflect what different direction the proceedings might have taken and what different results might have obtained. (See *People* v. *Chesser* (1947) 29 Cal.2d 815, 821 [178 P.2d 761]; see also *Williams* v. *Kaiser* (1945) 323 U.S. 471, 474-475 [89 L.Ed. 398, 401-402, 65 S.Ct. 363].) "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (*Glasser* v. *United States* (1942) 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457].)

The rule presuming prejudice particularly requires application in the instant case; it would be futile for us to attempt to measure prejudice on the basis of an argument which William's counsel never had the opportunity to present.[6]

The judgment is reversed.

McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent. "[T]he applicable due process standard in juvenile proceedings, as developed by *Gault* and *Winship,* is fundamental fairness. As that standard was applied in those two cases, we have an emphasis on factfinding procedures." (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 543 [29 L.Ed.2d 647, 659, 91 S.Ct. 1976] (plurality opinion).) Since the only real issue here was whom to believe, the facts could be found fairly without formal argument. To make summation a matter of right in such

---

[6]We do not imply that each infringement on, as distinguished from a denial of, the right of counsel is to be deemed so fundamental that prejudice must be presumed without further inquiry. In the instant context a mere limitation on closing argument might have constituted an abuse of discretion but not one requiring reversal if, upon an evaluation of prejudice, it could be demonstrated that the error was harmless beyond a reasonable doubt. (See *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see also *People* v. *Mendosa, supra,* 178 Cal. 509.) Counsel here, however, was precluded from making any argument. The testimony of William's witnesses was in sharp conflict with that of the officers and, it further appears, William's attitude, motivations and demeanor were of serious concern to the court. There was thus no way to measure the effectiveness of an argument which might have been made, nor the prejudice resulting from the refusal of the court to hear it.

a case unduly restricts the judge's discretion, moving the juvenile court process one step closer to an adversary proceeding indistinguishable from a criminal trial.

The judgment should be affirmed.