Filed 8/28/25  P. v. Brandon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100696 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE003999) |
| v. | |
| ERICK BRANDON, | |
| Defendant and Appellant. | |

A jury found defendant Erick Brandon guilty of rape and assault with intent to commit oral copulation and found true prior serious felony convictions as well as several aggravating factors.  Defendant pled guilty to illegal possession of a firearm by a convicted felon.  The trial court sentenced him under the Three Strikes law to an aggregate term of 54 years to life in prison.

On appeal, defendant contends:  (1) his waiver of his Sixth Amendment right to counsel was invalid because the trial court failed to advise him of his maximum potential sentence; and (2) the trial court prejudicially erred by failing to strike his prior serious felony convictions factors under Penal Code section 1385, subdivision (c).

We disagree and affirm.  Undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with rape (§ 261, subd. (a)(2)), assault with intent to commit oral copulation (§ 220), and illegal possession of a firearm by a convicted felon (§ 29800, subd. (a)(1)). The People alleged defendant had three prior serious felony convictions (§§ 667, subds. (b)-(i), 1170.12), as well as the following aggravating factors: (1) defendant had engaged in violent conduct that indicated a serious danger to society, (2) defendant's prior convictions were numerous or of increasing seriousness, (3) defendant had served a prior term in prison or county jail, (4) defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crimes were committed, and (5) defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(1)-(5).)

Prior to trial, defendant pled guilty to the firearm possession count. A jury found defendant guilty of the other two counts. In the second phase of the trial, the same jury found true the prior serious felony convictions and the aggravating factors that defendant had served a prior prison or jail term, that defendant was on probation, supervision, or parole when the crimes were committed, and that defendant's prior performance on probation, supervision, or parole was unsatisfactory. But it found not true that defendant engaged in violent conduct that indicated a serious danger to society. The trial court additionally found defendant's prior convictions were numerous.

The trial court sentenced defendant under the Three Strikes law to an aggregate term of 50 years to life plus 4 years in prison, consisting of a 25-years-to-life term on the rape count, a consecutive 25-years-to-life term on the assault count, and a consecutive 2-year term on the firearm possession count, doubled due to his prior strikes.

Defendant timely appeals.

DISCUSSION

I

*Faretta Waiver*

Defendant contends he did not knowingly and voluntarily waive his Sixth Amendment right to counsel under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) because the trial court failed to advise him of the maximum potential sentence he faced. We disagree.

A.    *Additional Background*

On the morning of the jury's second phase deliberations, defendant requested to represent himself. He contended that his counsel employed ineffective strategies and "failed [him] all the way around the board … from [d]ay [o]ne."

The trial court explained to defendant that he had the right to (1) be represented by counsel at all stages, (2) request counsel, (3) be sentenced within 20 court days, and (4) bring and confront new sentencing evidence and witnesses. It further warned defendant that (1) the prosecutor was experienced and "w[ould] argue for, likely, a high sentence," (2) defendant would not receive any assistance from the trial court or the prosecutor, (3) defendant must follow procedural and substantive rules, (4) the trial court may deny defendant's last minute request for counsel during the sentencing hearing, and (5) the trial court may reappoint counsel if defendant became disruptive.

Defendant confirmed he understood each right and warning. He acknowledged he was unfamiliar with the law and "would like an effective counsel to support" him. But he still decided to represent himself because he was concerned that his counsel may continue to make strategic mistakes "or just because he doesn't want to work." Thus, with "[his] life on the line," defendant decided to represent himself so he could "do everything, possibly, that [he] can."

The trial court noted defendant was "obviously articulate," confirmed he had a G.E.D., and found defendant had knowingly and intelligently waived his right to counsel.

3

Defendant and the trial court also signed a *Faretta* waiver form containing similar advice, but the form stated the penalties defendant faced only as "PC 261(a)(2)." After defense counsel was released, defendant stated he would file a motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

On that same afternoon, the jury returned the second-phase verdict on defendant's prior convictions and aggravating factors. After the jury was discharged, defendant asked about his maximum sentence exposure. The trial court stated it would be 25-years-to-life for each of the rape and assault counts, and the prosecutor added she would seek a total of 56 years to life. The prosecutor further stated the two 25-years-to-life terms must run consecutively, but the trial court said it would wait for briefing before making its final sentencing decision.

B.      *Faretta Warning*

A criminal defendant may knowingly and intelligently waive his Sixth Amendment right to assistance of counsel. (*Faretta, supra*, 422 U.S. at p. 807.) To do so, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Id.* at p. 835.) We concluded before that "the most reasonable solution consistent with case law and the United States Constitution is to require the trial court to advise a defendant desiring to represent himself at trial of the maximum punishment that could be imposed if the defendant is found guilty of the crimes, with enhancements, alleged at the time the defendant moves to represent himself." (*People v. Jackio* (2015) 236 Cal.App.4th 445, 454-455.) "The burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel." (*People v. McArthur* (1992) 11 Cal.App.4th 619, 627.)

On appeal, we "review the entire record — including proceedings *after* the purported invocation of the right of self-representation — and determine de novo whether the defendant's invocation was knowing and voluntary." (*People v. Marshall* (1997)

4

15 Cal.4th 1, 24, emphasis added; see *People v. Conners* (2008) 168 Cal.App.4th 443, 454-455 [finding sufficient *Faretta* warning when the trial court's advice of maximum sentencing exposure came days after granting the *Faretta* motion].)  We must also "draw every inference against supposing that the defendant wishes to waive the right to counsel."  (*Marshall,* at p. 23.)

Here, when defendant requested to represent himself, the trial court informed defendant of his right to be represented by counsel and to request counsel, and warned him that the experienced prosecutor would likely seek a "high sentence."  Defendant carefully weighed the benefits and disadvantages of representing himself:  he lacked experience and knowledge in the law but had deeper worries about counsel's ability to act in his best interest.  Knowing his life was "on the line," defendant ultimately decided to represent himself so that he could do "everything, possibly, that [he] can."  It is true that the trial court did not advise defendant of his maximum sentence exposure at this time; it is also true that the *Faretta* waiver form incorrectly stated the penalties for defendant's offenses as "PC 261(a)(2)."  These deficiencies would have rendered the advisement insufficient.  But immediately after counsel was discharged, defendant indicated his intent to file a *Romero* motion, demonstrating at least some awareness of his status as a strike offender.  And, just several hours later, the trial court clarified that defendant would face two 25-years-to-life terms, and the prosecutor added she would seek an aggregate term of 56 years to life.  This new information did not change defendant's assessment about representing himself, as he made no request for reappointment of counsel.  The totality of the circumstances demonstrates defendant knowingly and voluntarily waived his right to counsel with specific knowledge of his maximum sentence exposure.

Defendant contends the trial court should have warned him that he would be sentenced under the Three Strikes law.  He also appears to contend that the trial court expressed uncertainty about whether his sentences must run consecutively.  But the trial court was not required to ensure that defendant was aware of a specific legal concept.

5

(*People v. Riggs* (2008) 44 Cal.4th 248, 277; *Faretta, supra*, 422 U.S. at p. 836 [a defendant's "technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself"].)  In any event, the trial court effectively informed defendant of his maximum punishment under the Three Strikes law — two consecutive 25-years-to-life terms plus 6 years — even though it could not confirm at the time whether the terms must run consecutively.  (See *People v. Jackio, supra*, 236 Cal.App.4th at pp. 455-456 [finding sufficient *Faretta* warning when the trial court advised the defendant that he could face "life" even though the actual sentence may have involved multiple life terms].)

On this record, then, defendant has not carried his burden of demonstrating he did not knowingly and intelligently waive his right to counsel.

II

*Prior Strikes*

Defendant contends the trial court prejudicially erred by failing to consider the mitigating factors listed in section 1385, subdivision (c)(2) in deciding whether to strike his prior felony convictions.  We disagree.

"Subdivision (c) of section 1385 expressly applies to the dismissal of an 'enhancement.' " (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.)  "The term 'enhancement' has a well-established technical meaning in California law." (*Ibid.*)  It is equally well-established that the Three Strikes law provides an alternative sentencing scheme that is distinguishable from, and something other than, an enhancement.  (*People v. Superior Court (Romero), supra*, 13 Cal.4th at p. 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.)  "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law" when it added subdivision (c) to section 1385 in Senate Bill No. 81 (2021-2022 Reg. Sess.).  (*Burke*, at p. 243.)  Accordingly, the mitigating factors listed in section 1385, subdivision

6

(c) are inapplicable to the dismissal of defendant's prior felony convictions under the Three Strikes law.

DISPOSITION

The judgment is affirmed.

/s/
_____
MESIWALA, J.

We concur:

/s/
_____
HULL, Acting P. J.

/s/
_____
DUARTE, J.

7